2016 IL App (1st) 142088

No. 1-14-2088

FIRST DIVISION
May 31, 2016

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 11 CR 6438 |
| | ) | |
| SHAWAN DIGGINS, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Shawan Diggins was convicted of aggravated unlawful use of a weapon (AUUW) after a bench trial and was sentenced to 13 months in prison. Defendant appeals, alleging that his right to confront the witnesses against him was violated when the State was allowed to admit a certified letter that amounted to a testimonial affidavit from a nontestifying witness for its truth, which established an element of AUUW. For the following reasons, we reverse.

¶ 2                                    BACKGROUND

¶ 3     The State charged defendant with several counts alleging that he illegally possessed a firearm on April 12, 2011.  Before trial, the State dismissed three of the charges and proceeded on just two counts: (1) unlawful possession of a firearm by a street gang member, and (2) AUUW predicated on defendant's lack of a Firearm Owner's Identification (FOID) card.

¶ 4     At trial, two police officers testified as to what happened on the date in question.  Officer Jeffrey Rodenberg testified that at approximately 9:20 p.m., he and his partner, Officer Scott Celani, were patrolling in the vicinity of 80th Street and Fairfield Avenue.  Officer Rodenberg testified that as they were patrolling, he spotted defendant standing in an alley with another man. The officers knew there was a warrant out for his arrest, so they approached defendant.  Officer Rodenberg testified that as they approached defendant, defendant reached into his waist and pull out a dark-colored handgun.  Officer Rodenberg testified that he observed defendant toss the handgun over a chain-link fence.  Officer Rodenberg arrested defendant and directed another officer, Sergeant Poppish, who had arrived on the scene, to retrieve the handgun.  Officer Rodenberg testified that Sergeant Poppish climbed over the fence and retrieved a handgun.

¶ 5     Sergeant Michael Poppish testified that after arriving on the scene and talking to Officer Rodenberg, he went inside the backyard at 7955 South Fairfield and recovered a "black semiautomatic pistol, a .380, which I found to be loaded with six live rounds of ammunition."

¶ 6     The State then indicated that it had a "certified letter" from the Firearm Service Bureau of the Illinois State Police, which stated:

   "Based on the following name and date of birth information provided by the Cook

   County State's Attorney's Office, I, Sergeant Matt Weller, Firearms Services

   Bureau, Illinois State Police, do hereby certify, after a careful search of the FOID

files, the information below to be true and accurate for [defendant], whose date of birth is May 8, 1995. It is further certified that: (1) On December 28, 1997, this office received a FOID application from [defendant] with the above date of birth. On January 17, 2008, FOID Card #77550476 was denied due to [defendant] having a pending felony indictment; and (2) As of May 7, 2013, this office has no other record for [defendant]."

¶ 7 The document was signed and notarized. Defense counsel objected to the admission of the certified letter into evidence. Defense counsel argued that it was not a self-authenticating document, and that it was not kept in the normal course of business. The State responded that it was a self-authenticating document because it was "a certified document with a seal bearing the signature and seal of the office." The trial court stated that it believed the letter was properly admissible as a certified document of a governmental agency. The court stated that "[t]he rule that applies is the Illinois rule of evidence that permits the introduction of certified governmental documents." The court continued, stating, "If you want an opportunity to subpoena and cross-examine the witness and bring that person in as a witness on behalf of the [d]efense, I will give you that opportunity, but the exhibit *** is admissible over your very well-stated objection." Defense counsel continued its objection, stating that this was not a document kept in the normal course of business, and rather it was the result of a specific request by the State. The trial court again denied the objection because "the document speaks to a review of documents kept in the normal course of business."

¶ 8 Defendant then testified on his own behalf. He denied that he ever possessed a gun on the night in question. On cross-examination, defendant was asked, "you don't have a firearm owner's identification card, do you?" Defendant responded, "No, I do not."

¶ 9    At the close of evidence, the trial court noted that it had considered the testimony of Officer Rodenberg, Sergeant Poppish, the State's exhibits, "the certified document," and the testimony of defendant. The trial court found defendant not guilty of the unlawful possession of a firearm by a street gang member, but guilty of the AUUW count. The trial court sentenced defendant to 13 months in prison and a year of mandatory supervised release. Defendant now appeals.

¶ 10                                ANALYSIS

¶ 11    On appeal, defendant contends that that the admission of the certified letter from Illinois State Police alleging his lack of a FOID card violated his constitutional right of confrontation because the document constituted an affidavit that was testimonial hearsay, the affiant was not subject to prior cross-examination and not shown to be unavailable, and the affidavit was admitted substantively for its truth. The State responds that defendant failed to preserve this issue for appeal when he failed to include it in his posttrial motion, and that even if the issue had been properly preserved the document did not violate defendant's right of confrontation.

¶ 12    We first address the preservation issue. To preserve an issue for review, a party ordinarily must raise it at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant admits that while he objected to the State's use of the certified letter at trial, he failed to specifically object again in a posttrial motion. However, as defendant notes, he did argue in his posttrial motion that the State failed to present sufficient evidence regarding defendant's possession of a FOID card. See *People v. Mohr*, 228 Ill. 2d 53, 64-65 (2008) (the rule of forfeiture does not state that a defendant must object on identical grounds – only that the defendant must object during and after trial). In any event, our supreme court has held that certain types of claims are not subject to forfeiture for failing to file a posttrial motion, including

constitutional issues that were properly raised at trial and may be raised later in a postconviction petition. *Enoch*, 122 Ill. 2d at 190. The Post-Conviction Hearing Act provides a mechanism for criminal defendants to assert that a conviction or sentence resulted from a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2008). Postconviction proceedings permit inquiry into constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. If a defendant were precluded from raising a constitutional issue previously raised at trial on direct appeal merely because he failed to raise it in a posttrial motion, the defendant could simply allege the issue in a later postconviction petition. *People Cregan*, 2014 IL 113600, ¶ 18. Accordingly, we find that defendant's constitutional violation allegation was properly preserved on direct appeal.

¶ 13    The right of confrontation under the federal and state constitutions dictates that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. U.S. Const. 1970, amend. VI; Ill. Const., art. I, § 8. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). While our Illinois Supreme Court recognized that in *Crawford* the United States Supreme Court declined to spell out a "comprehensive definition of 'testimonial,' " it nevertheless described the class of testimonial statements covered by the confrontation clause as follows:

> "Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable

5

to cross-examine, or similar pretrial statements that declarants would reasonably

expect to be used prosecutorially, [citation] extrajudicial statements … contained

in formalized testimonial materials, such as affidavits, depositions, prior

testimony, or confessions, [citation] statements that were made under

circumstances which would lead an objective witness reasonably to believe that

the statement would be available for use at a later trial."  (Internal quotation marks

omitted.)  *Crawford*, 541 U.S. at 51-52.

The first question in this case therefore becomes whether the certified letter constituted a

testimonial statement.

¶ 14    Defendant relies on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), to support his

contention that the certified letter was "testimonial" in nature.  In *Melendez*, the defendant was

charged with distributing cocaine and with trafficking in cocaine in an amount between 14 and

28 grams.  At trial, the prosecution placed into evidence the bags of narcotics that had been

seized and three "certificates of analysis" showing the results of the forensic analysis performed

on the seized substances.  The certificates reported the weight of the seized bags and stated that

the bags had been examined and were found to contain cocaine.  The certificates were notarized

and signed by analysts at the State Laboratory Institute of the Massachusetts Department of

Public Health.  The defendant in *Melendez* objected to the certificates, asserting that the

confrontation clause decision in *Crawford* required the analysts to testify in person.  The

certificates were admitted into evidence over the defendant's objection, as *prima facie* evidence

of the composition, quality, and net weight of the narcotic.

¶ 15    On appeal, the defendant in *Melendez* contended that the admission of the certificates

violated his sixth amendment right to be confronted with the witnesses against him.  The

Supreme Court found that there "is little doubt that the documents at issue in this case fall within the 'core class of testimonial statements' thus described," as the Court's description of that category in *Crawford* mentioned affidavits twice. *Id.* at 310. The Court found that while the documents were denominated as "certificates," they were "quite plainly affidavits," which are " 'declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths.' " *Id.* (quoting Black's Law Dictionary 62 (8th ed. 2004)). The Court noted that "[t]he fact in question is that the substance found in the possession of [the defendant] was, as the prosecution claimed, cocaine – the precise testimony the analysts would be expected to provide if called at trial. The 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Id*. at 310-11 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)).

¶ 16    We likewise find that in the case at bar, the certified letter was an affidavit, as it was a declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths. *Id*. at 310. Moreover, the affidavit was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." (Internal quotation marks omitted.) *Crawford*, 541 U.S. at 52. Defendant was arrested in April 2011, and the trial began in April 2014. The certified letter was issued on May 7, 2013, presumably in preparation of trial. Additionally, whether defendant owned a FOID card constituted an element of AUUW, which the State had the burden to prove. Accordingly, absent a showing that the witness was unavailable to testify at trial and that defendant had a prior opportunity to cross-examine him, defendant was entitled to be confronted with the witness at trial. *Id*. at 54.

¶ 17    Finding that the certified letter was testimonial in nature and that defendant therefore had a right to be confronted with the declarant of the statement contained therein, we turn to the question of whether the confrontation clause violation in the case at bar was harmless beyond a reasonable doubt.  In determining whether a constitutional error is harmless, the test to be applied is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained.  *People v. Patterson*, 217 Ill. 2d 407, 428 (2005) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).  The State bears the burden of proof.  *Sullivan*, 508 U.S. at 278-79.  Here, while the State briefly states that a *Crawford* violation "is subject to harmless error review," it does not provide any argument whatsoever as to whether the *Crawford* violation in the case at bar was harmless beyond a reasonable doubt.  We therefore cannot say that it has met its burden of proof on this issue.

¶ 18    Moreover, we note that to convict a defendant of AUUW, the State must prove beyond a reasonable doubt either that a defendant carried a weapon on his person or in his vehicle, outside his home (720 ILCS 5/24-1.6(a)(1) (West 2008)) or carried a weapon on his person on the public way (720 ILCS 5/24-1.6(a)(2) (West 2008)), and one of the nine factors that transform the offense of unlawful use of a weapon to AUUW.  *People v. Henderson*, 2013 IL App (1st) 113294, ¶ 21.  Relevant to this case is factor 3(C), the person possessing the firearm had not been issued a valid FOID card.  720 ILCS 5/24-1.6(a)(3)(C) (West 2008).  Accordingly, whether defendant had been issued a valid FOID card was an essential element the State had to prove in order for the trial court to convict him of AUUW.  Without the affidavit from the Illinois State Police, the element of possession of a valid FOID card could not be proven, as neither of the police officers testified as to defendant's possession of a FOID card.  While it is true that defendant himself testified on cross-examination that he was not in possession of a FOID card,

8

we are persuaded by defendant's argument that had the affidavit been excluded from evidence, the State would not have been able to prove AUUW beyond a reasonable doubt, and therefore defendant may have decided not to take the stand on his own behalf. See *People v. Patrick*, 233 Ill. 2d 62, 75-76 (2009); *People v. Hogan*, 388 Ill. App. 3d 885, 893-94 (2009). Accordingly, because the State has failed to show beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained (*Patterson*, 217 Ill. 2d at 428), we find that the confrontation clause violation did not constitute harmless error.

¶ 19    Before we remand this cause for a new trial, we must determine whether a retrial would raise double jeopardy concerns. Double jeopardy prohibits a retrial when a conviction is reversed due to insufficient evidence to support the conviction, but does not prohibit retrial where a conviction is set aside due to the erroneous admission of hearsay evidence. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995) (retrial is permitted even though evidence is insufficient to sustain a verdict when erroneously admitted evidence has been discounted). Here, when considering all the evidence submitted at the original trial, including the discounted evidence, we find that a rational trier of fact could have found the essential elements of AUUW beyond a reasonable doubt, and therefore we remand this cause for a new trial. See *Olivera*, 164 Ill. 2d at 396.

¶ 20                              CONCLUSION

¶ 21    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this case for a new trial.

¶ 22    Reversed and remanded.