2019 IL App (1st) 180008-U
No. 1-18-0008
Order filed December 23, 2019

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 16375 |
| | ) | |
| HERBERTH MENDOZA, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Griffin and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's trial counsel was not ineffective for failing to move to suppress defendant's statement to police that he did not have a license or for failing to object to admission of his certified driver's abstract, where neither the motion nor the objection would have been meritorious.

¶ 2    Herberth Mendoza was convicted of aggravated driving under the influence of alcohol and was sentenced to two years' probation. On appeal, he argues that his conviction should be reversed and remanded for a new trial because his trial counsel should have: (i) moved to suppress his statement to police that he did not have a driver's license and (ii) objected to the admission of a

driving abstract indicating he did not have a driver's license, which violated his confrontation rights.

¶ 3    We affirm. Had Mendoza's counsel raised the motion to suppress, it would have not been meritorious and, so, Mendoza suffered no prejudice. As to objecting to admitting the driving abstract, under prevailing professional norms, it constitutes sound trial strategy, not deficient performance.

¶ 4                              Background

¶ 5    Mendoza was charged with one count of aggravated DUI, arising from a traffic stop on August 9, 2015. At trial, Metra police officer Atha Hunt testified that he was driving northbound on Milwaukee Avenue, near the intersection at Kilbourn Avenue, when he saw a blue Ford sports utility vehicle traveling southbound at a high speed. The SUV made a left-hand turn in front of Hunt onto Kilbourn Avenue, traveling "so fast" that "[i]t looked like it was about to tip over." Hunt had to "slam on [his] brakes" to avoid hitting the SUV, which began travelling northbound on Kilbourn, followed by a red car.

¶ 6    Hunt then activated his emergency lights. Hunt identified the driver of the SUV, in court, as Mendoza. The driver of the red car also stopped and told Hunt Mendoza had fled from an accident. Hunt approached the SUV as Mendoza opened the door. When Mendoza stepped out, Hunt immediately told him: "I'm going to need you to wait in the back of my squad car and I'll talk with you in a few seconds about what's going on." Hunt then "grabbed" Mendoza's shoulder as "it looked like he was swaying, about to fall," and escorted Mendoza to the rear passenger seat.

¶ 7    After Hunt spoke with the driver of the red car, he went to speak with Mendoza. Hunt smelled the "strong odor of an alcoholic beverage coming from his breath," and noted "bloodshot,

glassy eyes." Hunt asked for Mendoza's driver's license and proof of insurance. Mendoza responded that "[h]e didn't have [a driver's license], that he's an immigrant to this country," and he "couldn't locate" his proof of insurance. Mendoza slurred his speech when he was speaking with Hunt. At that point, Hunt asked whether Mendoza had consumed alcohol. Mendoza acknowledged that he had six beers some "two to three hours" before Hunt stopped him.

¶ 8 Hunt believed Mendoza might be intoxicated, so asked Mendoza to perform the standard field sobriety tests. Mendoza agreed. Hunt administered the tests. Based on his observations, Hunt concluded Mendoza was under the influence of alcohol. Hunt placed Mendoza in handcuffs and escorted him to his squad car because he was under arrest for DUI "at that point." Hunt then searched the SUV "incident to tow" and recovered six unopened cans of beer, a one-third full can of beer, and a half-full bottle of whiskey. Photographs of the inside of SUV and the alcohol there were published and admitted into evidence.

¶ 9 At the station, Hunt read Mendoza the Warning to Motorists, advised him of his *Miranda* rights, and offered Mendoza the opportunity to take a breathalyzer test, which he declined.

¶ 10 The State sought to admit a three-page certified driver's abstract. Labeled "court purposes," the abstract had printed on the top of each page: "Pursuant to the provisions of the Illinois Vehicle Code the following information is furnished from the driver's license file of the person identified above." The bottom of each page contained this paragraph, next to the Secretary of State's seal and signature:

"This official record is received directly from the Secretary of State's Office via computer link-up system. This is to certify, to the best of my knowledge and belief, after a careful search of my records, that the information set out herein is a true and accurate copy

of the captioned individual's driving record; identified by driver's license number, and I certify that all statutory notices required as a result of any driver control actions taken have been properly given."

Relevant here, the abstract contains Mendoza's name, address, date of birth, and states, "no valid license on 08-09-2015 * * * End of Record * * *" The court asked whether Mendoza's counsel objected to admission of the documents. His counsel said, "[n]o objection." The court admitted the documents into evidence.

¶ 11 The trial court denied Mendoza's motion for a directed finding. Mendoza rested without presenting evidence and argued in closing that Hunt was not a credible witness due to inconsistencies in and impeachment of his testimony, and the State failed to prove beyond a reasonable doubt that Mendoza was impaired at the time of arrest.

¶ 12 The trial court found Mendoza guilty of aggravated DUI, finding Hunt's testimony "credible as to what occurred," despite some impeachment in his testimony. The court ruled the evidence supported Mendoza having been impaired while driving. The trial court denied Mendoza's motion for a new trial. At sentencing, Mendoza's counsel stated that, after Mendoza's arrest and at counsel's behest, Mendoza had obtained legal driving privileges, "for possible mitigation." The trial court sentenced Mendoza to two years' probation, along with 480 hours of community service.

¶ 13 Analysis

¶ 14 Mendoza argues this court should reverse his conviction and remand for a new trial because his trial counsel was ineffective for failing to move to suppress Mendoza's statement to Officer

Hunt that he did not have a driver's license and for failing to object to the admission of Mendoza's driver's abstract into evidence.

¶ 15    Claims of ineffective assistance of counsel follow the two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Manning*, 241 Ill. 2d 319, 326 (2011). To establish a claim, a defendant must demonstrate both (i) counsel's performance was objectively unreasonable under prevailing professional norms and (ii) the deficient performance prejudiced defendant. *People v. Veach*, 2017 IL 120649, ¶ 30. If a reviewing court finds defendant suffered no prejudice from counsel's acts or omissions, it need not determine whether counsel's performance was objectively unreasonable. *People v. Ceja*, 204 Ill. 2d 332, 358 (2003). We review claims of ineffective assistance of counsel *de novo*. *People v. Demus*, 2016 IL App (1st) 140420, ¶ 21.

¶ 16                                    Suppression of Statement

¶ 17    Mendoza argues his counsel should have moved to suppress the statement he made to Officer Hunt that he had no driver's license. Mendoza argues his statement violated his *Miranda* rights because it was the result of custodial interrogation when Hunt had placed Mendoza into the back of the squad car. Generally, a trial counsel's decision on whether to file a motion to suppress involves a matter of trial strategy, to which we afford great deference. *People v. Bew*, 228 Ill. 2d 122, 128 (2008). To establish prejudice under the second *Strickland* prong, "the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15.

¶ 18    An individual who is subjected to custodial interrogation must be informed of certain rights before any questioning. *Miranda v. Arizona*, 384 U.S. 436, 476-77 (1966). Custodial interrogation

means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 444. A number of factors determine if a statement was made in a custodial setting, including: (i) the location, time, length, mood, and mode of questioning; (ii) the number of police officers present during the interrogation; (iii) the presence or absence of family and friends; (iv) indicia of formal arrest procedure, such as the show of weapons or force, physical restraint, booking, or fingerprinting; (v) the manner by which the accused arrived at the place of questioning; and (vi) the accused's age, intelligence, and mental makeup. *People v. Slater*, 228 Ill. 2d 137, 150 (2008).

¶ 19    Because ordinary traffic stops are typically temporary and public, individuals temporarily detained are not "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 437-440 (1984); *People v. Briseno*, 343 Ill. App. 3d 953 (2003) ("[t]he brief and public nature of a traffic stop mitigates the danger of self-incrimination which is present during custodial interrogation.") (citing *Berkemer*, 468 U.S. at 437-39). The relevant inquiry asks, "how a reasonable [person] in the suspect's position would have understood his [or her] situation." *Berkemer*, 468 U.S. at 442.

¶ 20    A reasonable person in Mendoza's position would have understood that he or she was not in custody at the time the officer asked for a driver's license. Mendoza was not placed in handcuffs and knew he would be in the squad car only until Hunt could return and ask him questions "in a few seconds." As the court in *Berkemer* noted, during a traffic stop, "[a] motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration." *Berkemer*, 468 U.S. at 437. A reasonable person in Mendoza's position would have

understood they were temporarily detained, not arrested, when Hunt asked for a driver's license, and Mendoza voluntarily admitted he did not have one.

¶ 21    In addition, we do not find Hunt's request for Mendoza's driver's license to be interrogation under *Miranda*. Every person who operates a motor vehicle must have a driver's license or permit in their immediate possession and display it when a law enforcement officer demands. 625 ILCS 5/6-112 (West 2014). This request is routine during traffic stops. See *People v. Ortiz*, 317 Ill. App. 3d 212, 220 (2000) (police officer engaged in minor traffic stop may briefly detain driver to request driver's license). Further, "a request for identification is facially innocuous: 'It does not suggest official interrogation and is not the type of question or request that would increase the confrontational nature of the encounter.' An innocent passenger has nothing to fear and no reason to feel intimidated or threatened." *People v. Harris*, 228 Ill 2d. 222, 248-49 (2008).

¶ 22    Mendoza contends being placed into a squad car's backseat physically restrained his freedom and, because "defendant reasonably believed he was not free to leave," establishes "the functional equivalent of an arrest." See *Berkemer*, 468 U.S. at 442. While Hunt did place Mendoza into the back seat temporarily, the situation lacked any other indicia of formal arrest. See *Slater*, 228 Ill. 2d at 150. Hunt never showed his weapon or used force; Mendoza was not yet placed in handcuffs, fingerprinted, or booked. See *id*. Mendoza's freedom was temporarily restrained, but no evidence supports Mendoza's contention that his temporary detention differs from any other temporary detention associated with a traffic stop.

¶ 23    Thus, had Mendoza's trial counsel raised the motion to suppress, it would have not been meritorious and, so, Mendoza suffered no prejudice. See *Henderson*, 2013 IL 114040, ¶ 15. The ineffective assistance of counsel claim fails.

¶ 24                    Admission of Driver's Abstract

¶ 25    Similarly, we do not find trial counsel to have been ineffective for failing to object to the admission of Mendoza's driver's abstract. Mendoza argues the admission of the testimonial statement in his driver's abstract, without a live witness, violated his confrontation rights. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

¶ 26    Mendoza relies largely on *People v. Diggins*, 2016 IL App (1st) 142088. There, a certified letter from the Illinois State Police that the defendant lacked a FOID card constituted a testimonial statement under *Crawford*, and the State's introduction of the letter violated defendant's confrontation right. *Diggins*, 2016 IL App (1st) 142088, ¶¶ 6, 16 (letter certified that, "after a careful search of the FOID files," State Police officer determined defendant's application for FOID license had been denied before arrest, and the office had no other record for defendant).

¶ 27    "Decisions such as what matters to object to and when to object are, by and large, matters of trial strategy." *People v. Sparks*, 335 Ill. App. 3d 249, 254 (2002). Mendoza has the burden of overcoming the presumption that Mendoza's counsel's decision not to object was "within the realm of trial strategy," (*People v. Whittaker*, 199 Ill. App. 3d 621, 628 (1990)) and a claim "which arises from a matter of defense strategy will not support a claim of ineffective representation." (*People v. Dobrino*, 227 Ill. App. 3d 920, 934 (1992)). We find Mendoza has not met his burden of establishing that his counsel's decision not to object was objectively unreasonable.

¶ 28    The decision not to object to the abstract could constitute ineffective assistance if Mendoza actually had a driver's license and the certification was in error. See *People v. Cox*, 2017 IL App

(1st) 151536, ¶ 88 (reviewing ineffective assistance of counsel claim where counsel failed to object to admission of certified letter from the Illinois State Police stating that defendant did not have FOID card).

¶ 29 The record contains no evidence suggesting Mendoza had a driver's license at the time of his arrest. Indeed, trial counsel informed the court that he told Mendoza to get his driver's license for purposes of mitigation at trial and sentencing. During cross-examination and argument, counsel focused on showing the State failed to prove beyond a reasonable doubt Mendoza's impairment caused by alcohol. We must presume this was sound trial strategy, not deficient performance.

¶ 30 Because counsel's performance was not objectively unreasonable under prevailing professional norms, Mendoza's ineffective assistance of counsel claim crumples. See *Strickland*, 466 U.S. at 688-89.

¶ 31 Affirmed.