2020 IL App (1st) 172385-U
No. 1-17-2385
Order filed February 10, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 16 CR 18576 |
| v. | ) | |
| | ) | Honorable Diane G. Cannon, |
| JASYN A. NEWBERN, | ) | Judge presiding. |
| | ) | |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions, concluding (1) the State presented sufficient evidence to prove defendant was under the influence of alcohol while operating a motor vehicle, (2) the State presented sufficient evidence to prove defendant's license was summarily suspended at the time of the offenses, and (3) the admission of defendant's driving abstract at trial did not deprive defendant of his constitutional right to confront witnesses.

¶ 2    Following a bench trial, the trial court found defendant, Jasyn A. Newbern, guilty of aggravated driving under the influence of alcohol (DUI) and felony driving while his license was suspended and sentenced him to concurrent one-year prison terms. On appeal, defendant argues (1) the State failed to prove beyond a reasonable doubt he was under the influence of alcohol, (2)

the State failed to prove beyond a reasonable doubt his license had been summarily suspended at the time of the offenses, and (3) the admission of a certified copy of his driving abstract, which was testimonial in nature, violated his constitutional right to confront the witnesses against him. We affirm.

¶ 3     The State charged defendant by information with, *inter alia*, aggravated DUI (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2016)), and felony driving while his license was suspended (625 ILCS 5/6-303(a), (d) (West 2016)). The State alleged that, on November 11, 2016, defendant drove or was in actual physical control of a motor vehicle while under the influence of alcohol at a time when his driving privileges had been statutorily summary suspended pursuant to section 11-501.1 of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501.1 (West 2016)).

¶ 4     The matter proceeded to a bench trial, and the State presented the testimony of Officer Karen Etti, as well as dashboard camera footage of her encounter with defendant and a certified copy of defendant's driving abstract. Etti testified that, at approximately 8:42 p.m. on November 11, 2016, she was on patrol near the area of Halsted Street and 84th Street in Chicago. She observed that defendant's rear license plate was not lit and saw defendant was not wearing his seatbelt in violation of the Code. Etti activated her emergency lights to initiate a traffic stop. Defendant did not immediately pull over his vehicle; instead, he turned right onto 84th Street, and stopped his vehicle there.

¶ 5     Etti pulled her squad car next to defendant's vehicle, asked why he did not stop on Halsted Street, and told him to remain seated in his vehicle. Etti then parked her squad car behind defendant's vehicle, exited it, and approached the driver's side of defendant's vehicle. As Etti spoke with defendant, she smelled "[a] strong odor of alcoholic beverage" on defendant's breath,

observed that his eyes were "bloodshot" and "watery," and observed that "[h]e had mumbled speech." Etti asked defendant if he had been drinking alcoholic beverages, and he responded he had been drinking beer.

¶ 6    Based on her observations and defendant's response that he had been drinking beer, she asked defendant to exit the vehicle to perform field sobriety tests. Once outside the vehicle, Etti had to repeat instructions to defendant on several occasions. Etti explained the horizontal gaze nystagmus (HGN) test to defendant, who was uncooperative. He "kept stating he did not understand what [Etti] was saying." When Etti tried to explain the test again, defendant continued to tell her he did not understand and then told her his uncle was a police officer.

¶ 7    Defendant was taken into custody and placed into the back seat of Etti's squad car. When defendant told Etti he did not refuse the field sobriety tests, she gave him a second opportunity to perform them. Etti took defendant out of her squad car and attempted to explain the HGN test for the second time. Defendant kept asking questions and would not perform the test.

¶ 8    Etti testified that, in her 16 years of experience as a police officer, she had encountered persons under the influence of alcohol on more than 500 occasions. In her personal capacity, she had come into contact with persons under the influence of alcohol more than 100 times. Based on her observations and her professional and personal experience, Etti believed defendant was under the influence of alcohol. Etti based her determination on the strong odor of alcohol on defendant's breath, his bloodshot and watery eyes, and his admission that he had been drinking alcohol.

¶ 9    Etti handcuffed defendant and transported him to the station, where she gave him a third opportunity to perform field sobriety tests. Defendant did not cooperate, which Etti interpreted as a refusal to perform the tests. Etti read defendant the "Warning to Motorists" form (625 ILCS 5/11-

501.1(c) (West 2016)), and he refused to sign. She observed defendant for a period of time greater than 20 minutes and then offered defendant a Breathalyzer test, which defendant refused.

¶ 10     Etti testified that, as part her investigation, she looked into defendant's driving history by "running" defendant's personal information, including his name and date of birth. The State showed Etti defendant's driving abstract. According to Etti, the abstract indicated defendant's driver's license was revoked on November 11, 2016 and had expired on April 30, 2015. Etti also learned that defendant's license was revoked as a result of a prior DUI conviction, and she verified that defendant's license was suspended based on a statutory summary suspension related to a previous DUI arrest.

¶ 11     On cross-examination, Etti testified she observed defendant drive his vehicle for about one block before she pulled him over. She did not observe defendant exceed the posted speed limit or weave, drift, or swerve prior to the traffic stop. Defendant operated his vehicle in an ordinary manner prior to the stop. When defendant turned right onto 84th Street, there was nothing unusual about the manner in which he did so, and when he stopped, the front and back tires to his vehicle were equidistant from the curb. Etti did not formulate her opinion that defendant was under the influence of alcohol at the time she stopped defendant's vehicle because nothing in the manner in which he drove his vehicle gave rise to such a suspicion.

¶ 12     Etti had no difficulty understanding defendant's speech. Defendant did not stumble, stagger, or sway while he was exiting his vehicle, while walking about the scene, or while walking from Etti's squad car into the police station. Defendant did sway when he was standing outside the vehicle and when he put his feet together during the first attempt at the HGN test. Defendant did not fumble with his personal items when he produced his driver's license or state identification

card.[1] He denied he was under the influence of alcohol. He cooperated with Etti while she handcuffed him on both occasions at the scene.

¶ 13    Etti clarified when she made her determination that defendant was under the influence of alcohol. She had not formed her opinion he was under the influence when she first offered the HGN test. Rather, at that point, she believed "possibly it could have been over[]consumption" based on the strong odor of alcohol, bloodshot eyes, and admission to drinking alcohol. Etti did not demonstrate or offer defendant the walk-and-turn or one-legged stand field sobriety tests because she did not "get to that point."

¶ 14    Etti's squad car was equipped with in-car video-recording equipment, which recorded the events immediately before and during the traffic stop. The video was introduced into evidence and published to the trial court. Etti's account of her encounter with defendant is consistent with the video recording, and it shows she needed to repeat instructions to defendant on numerous occasions throughout the stop when defendant either failed or was slow to follow her instructions.

¶ 15    The parties stipulated as follows:

"It is hereby stipulated by and between the parties that the defendant has two prior DUIs, a supervision from 2011 as well as a conviction from 2014. Additionally, he has one 6-303 conviction [for driving while his license was suspended or revoked] that took place after the statutory summary suspension was in effect and that conviction is from 2013."

The parties further stipulated that the stipulated matters were all misdemeanors.

¶ 16    After the parties read the stipulation, the State sought admission into evidence of the driving abstract which it introduced during Etti's testimony. Defendant did not object. The abstract

---

[1] Etti could not recall whether defendant tendered a driver's license or a state identification card.

is six pages in total and is labeled "court purposes" at the top of each page. The top of each page also contains the statement, "Pursuant to the provisions of the [Code] the following information is furnished from the driver[']s license file of the person identified above." At the bottom of each page, next to the Secretary of State's seal and signature is the following language:

"This official record is received directly from the Secretary of State's Office via computer link-up system. This is to certify, to the best of my knowledge and belief, after a careful search of my records, that the information set out herein is a true and accurate copy of the captioned individual's driving record; identified by driver's license number, and I certify that all statutory notice required as a result of any driver control actions taken have been properly given."

Defendant is identified by name, date of birth, and driver's license number on each page of the abstract.

¶ 17    At the conclusion of the State's case, defendant moved for a directed finding. The trial court denied the motion. Defendant did not present any evidence, and the trial court found him guilty of aggravated DUI and felony driving while his license was suspended.

¶ 18    Defendant filed a posttrial motion, which did not raise any issue with respect to the State's use of defendant's driving abstract at trial. The trial court denied the motion and sentenced defendant to concurrent one-year prison terms. Defendant did not file a motion to reconsider sentence. This appeal followed.[2]

---

[2] On December 2, 2019, the supreme court entered a supervisory order directing this court to treat defendant's untimely notice of appeal as a properly perfected appeal from the trial court's judgment.

¶ 19    Defendant first contends the State failed to prove beyond a reasonable doubt that he was under the influence of alcohol when Etti pulled him over. According to defendant, Etti's testimony established only that he had consumed alcohol prior to operating his vehicle and, "[b]ecause the consumption of alcohol is not itself sufficient to prove a person was under the influence of alcohol," the State's evidence was too unsatisfactory to establish defendant's guilt beyond a reasonable doubt. We disagree.

¶ 20    When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee reasonableness of the decision. *Id.* However, "[a] criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 21    As charged here, to sustain its burden of proof on the aggravated DUI charge, the State was required to prove defendant drove or was in actual physical control of a vehicle "while *** under the influence of alcohol *** during a period in which the defendant's driving privileges [were] *** suspended, where the *** suspension was for a violation of *** Section 11-501.1." 625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2016); see 625 ILCS 5/11-501.1(e) (West 2016) (Secretary of

State shall enter statutory summary suspension upon receipt of sworn report from a law enforcement officer that the driver refused to submit to testing to determine blood-alcohol concentration). Defendant does not dispute he was driving or in actual physical control of a vehicle. Instead, he contends he was not "under the influence of alcohol" at the time of his encounter with Etti.

¶ 22    "A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." (Internal quotation marks omitted.) *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007). Thus, a defendant is guilty of DUI if the State proves the driver was under the influence of alcohol to a degree that rendered him incapable of driving safely. *Id.* at 631-32. The fact a defendant is under the influence of alcohol may be proved through circumstantial evidence. *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 25. Credible testimony from an arresting officer is by itself sufficient to sustain a conviction for DUI. *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 24 (citing *People v. Janik*, 127 Ill. 2d 390, 402-03 (1989)).

¶ 23    "Proof of intoxication requires more than evidence that the defendant consumed alcohol." *People v. McHugh*, 121 Ill. App. 3d 825, 833 (1984). However, the State need not present scientific evidence of impairment to meet its burden of proof. *People v. Robinson*, 368 Ill. App. 3d 963, 983 (2006). To prove impairment, the State may introduce testimony relating to the defendant's appearance, speech, or conduct, the odor of an alcoholic beverage on the defendant's breath, and the defendant's inability to pass a field sobriety test. *Id.* The refusal to take a field sobriety test or a Breathalyzer test is also relevant to the issue of impairment and can be admitted to establish consciousness of guilt. *People v. Morris*, 2014 IL App (1st) 130152, ¶ 20. The defendant's mention

that he knows a police officer is also a relevant consideration as it relates to the defendant's consciousness of guilt. *People v. Bostelman*, 325 Ill. App. 3d 22, 34 (2001).

¶ 24    We conclude the State presented sufficient evidence to sustain the trial court's finding that defendant was under the influence of alcohol while operating a vehicle. Etti testified she observed defendant in the driver seat when she initially curbed his vehicle. She then parked her squad car behind defendant's vehicle and spoke to him through the driver's side window, at which time she smelled a strong odor of alcohol on defendant's breath and observed his "watery" and "bloodshot" eyes. Etti asked defendant whether he had been drinking, and defendant admitted he had been drinking beer.

¶ 25    Based on her observations and defendant's admission to consuming alcohol, Etti believed defendant may have overconsumed alcohol and asked defendant to exit the vehicle. Etti then offered defendant the HGN test and directed defendant to stand with his feet together, at which time defendant swayed. Defendant did not cooperate with Etti in regard to the HGN test and instead repeatedly told Etti that he did not understand what she was saying. When she tried to explain the test again, he told her his uncle was a police officer. Etti interpreted this conversation as a refusal to perform the HGN test. Etti then handcuffed defendant, and he was walked to the back seat of her squad car and placed inside.

¶ 26    Defendant told Etti he had not refused any tests, so she gave him a second chance. When she began explaining the HGN test again, defendant again told her he did not understand her instructions and instead asked her what he had done wrong. Etti interpreted this as a second refusal to perform the HGN test. Etti transported defendant back to the station, where defendant continued his pattern of noncooperation. Defendant did not cooperate when Etti gave him a third opportunity

to perform field sobriety tests, refused to sign the "Warning to Motorists" form, and refused to take a Breathalyzer test. Further, Etti testified she had come into contact with intoxicated persons more than 500 times in her professional capacity and 100 times in her personal capacity and, based on her observations and experience, she came to the conclusion defendant was under the influence of alcohol.

¶ 27    In addition, a video recording of the traffic stop was admitted into evidence and published to the trial court. Etti's account of her encounter with defendant was consistent the video recording, which shows defendant swayed while Etti explained the HGN test for the first time. The video also showed Etti was required to repeat her instructions to defendant on numerous occasions throughout the stop when defendant either failed or was slow to follow her instructions.

¶ 28    When viewed in the light most favorable to the State, Etti's observations relating to defendant's breath, eyes, speech, swaying as he stood, and his inability to understand Etti's instructions, and defendant's admission to consuming alcohol, together with the evidence relating to defendant's consciousness of guilt, could lead a reasonable fact finder to conclude defendant was under the influence of alcohol when Etti initiated the traffic stop.

¶ 29    Defendant nevertheless argues he was able to perform numerous tasks both at the scene and after he was transported to the police station without any problem or indication of impairment. For instance, defendant notes Etti admitted (1) there was nothing unusual about his driving, (2) he exited his car in an ordinary manner without stumbling, staggering, or swaying, (3) he walked about the scene in an ordinary manner, (4) he entered and exited Etti's squad car without problem even while handcuffed, (5) he did not fumble with his wallet when retrieving his identification card, and (6) he exited Etti's squad car and walked into the station without trouble. According to

defendant, this evidence undermined the remaining evidence of his impairment, rendering the State's evidence insufficient to sustain the finding of guilt. We disagree. The State was not required to prove defendant was completely incapacitated by his consumption of alcohol but rather that he was incapable of driving safely. *Tatera*, 2018 IL App (2d) 160207, ¶ 29. The evidence supporting defendant's position does not render the evidence supporting the opposite conclusion insufficient. *Id.*

¶ 30    Defendant asserts this case is similar to *People v. Williams*, 3 Ill. App. 3d 1036 (1972), wherein the appellate court reversed the defendant's conviction for DUI. In *Williams*, the police officer spoke with the defendant and learned the defendant had struck a vehicle on a dark residential street that was covered with ice and snow. *Id.* at 1037-38. The officer testified he smelled a strong odor of alcohol on the defendant's breath and observed the defendant's eyes were bloodshot. *Id.* at 1037. However, the color of the defendant's face was normal, and he was cooperative with the officer. *Id.* The defendant swayed when he walked and staggered when he turned. *Id.* The defendant had a "poor reaction" to light, but his speech was "fair." *Id.* The defendant did not exhibit abnormal behavior. *Id.*

¶ 31    The defendant testified he had been in a bar for 20 minutes and consumed one cocktail before leaving the bar to drive home. *Id.* at 1038. As defendant drove home, a taxicab drove down the middle of the street in the defendant's direction, so the defendant pulled his car to the right side of the street and struck a parked car in an attempt to avoid the taxi. *Id.* The defendant then parked his car and spoke with the owner of the vehicle he had struck. *Id.* The defendant testified he was not under the influence of alcohol. *Id.* The wife of the owner of the vehicle testified she waited

with the defendant for an hour and a half before the police arrived. *Id.* She did not smell any alcohol on the defendant, and it was her opinion the defendant was not under the influence of alcohol. *Id.*

¶ 32     The appellate court reversed the defendant's conviction for DUI. *Id.* at 1040. In doing so, the appellate court noted the conflicting testimony from the police officer and the vehicle owner's wife as to whether the defendant was impaired. *Id.* at 1038-39. The court also noted that no field sobriety tests were given to the defendant, and the officer testified to facts favorable to the defendant's, such as his normal face color, normal behavior, "fair" speech, orderly appearance, and cooperative attitude. *Id.* at 1038. The court found significant the fact the officer did not observe the defendant at the time he was driving but rather an hour and a half later. *Id.* at 1039. According to the court, the only evidence that the defendant was intoxicated at the time he was driving was his statement he had one cocktail before driving home from a bar. *Id.*

¶ 33     According to defendant, this case is similar to *Williams* because the State failed to prove there was anything abnormal about his driving or his behavior at the scene. Additionally, defendant notes he, like the defendant in *Williams*, had red eyes, smelled of alcohol, and admitted to drinking, but had fair speech and denied being intoxicated. Defendant also notes he did not, as did the defendant in *Williams*, crash his vehicle or stagger or sway when he moved.

¶ 34     *Williams*, however, is distinguishable in several respects. First, the trial court in *Williams* was presented not only with the defendant's testimony on the issue of intoxication, but also with that of a neutral witness, who did not believe the defendant was intoxicated based on her hour and a half interaction with him. In this case, on the other hand, the trial court was not presented with such evidence except Etti's testimony that defendant denied he was intoxicated at the scene. Second, the defendant in *Williams* was never offered field sobriety tests but, here, defendant was

offered and refused field sobriety tests twice at the scene and again at the police station, and he also refused to take a Breathalyzer test, evidencing his consciousness of guilt. Third, the defendant in *Williams* was cooperative with the police. Defendant did not cooperate with Etti with respect to her administration of the traffic stop, repeatedly telling Etti he did not understand her simple instructions or otherwise not following them. Finally, the officer in *Williams* did not observe the defendant until one and a half hours after he stopped driving, which cast doubt on the conclusion that he had operated the vehicle while he was intoxicated. In this case, on the other hand, Etti made her observations immediately after she pulled defendant over.

¶ 35    In sum, the evidence presented at trial, when viewed in the light most favorable to the State, was sufficient to permit a reasonable fact finder to conclude defendant was under the influence of alcohol at the time he was driving his vehicle.

¶ 36    Defendant next contends this court should reduce his convictions from Class 4 felonies to their misdemeanor counterparts because the State failed to prove beyond a reasonable doubt that his driving privileges were summarily suspended pursuant to section 11-501.1 of the Code (625 ILCS 5/11-501.1 (West 2016)) at the time of the offenses. According to defendant, Etti's testimony on the issue was vague and the driving abstract introduced by the State showed defendant's most recent statutory summary suspension ended nearly two years before his arrest. We disagree.

¶ 37    Generally, DUI and driving on a suspended license are Class A misdemeanors. See 625 ILCS 5/11-501(c)(1) (West 2016); 625 ILCS 5/6-303(a) (West 2016). In this case, however, the State charged defendant with aggravated DUI and felony driving on a suspended license based on the fact his license was summarily suspended pursuant to section 11-501.1 of the Code at the time of the offense, which elevated the offenses to Class 4 felonies and subjected defendant to stricter

penalties. See 625 ILCS 5/11-501(a)(2), (d)(1)(G), (d)(2)(A) (West 2016); 625 ILCS 5/6-303(a), (d) (West 2016).[3] Thus, defendant argues, the State was required to prove beyond a reasonable doubt that defendant's license was summarily suspended under section 11-501.1 of the Code on November 11, 2016, the date of the offense.

¶ 38     We conclude the State presented sufficient evidence to establish defendant's license was summarily suspended pursuant to section 11-501.1 of the Code at the time of the offense. Here, Etti testified that she investigated the status of defendant's driver's license after she arrested him for DUI. Her investigation revealed defendant's license was revoked on the date of the offense and his license had expired on April 30, 2015. Etti also testified defendant's license was summarily suspended in relation to a previous DUI arrest. From this testimony, the trial court drew a reasonable inference that defendant's license was summarily suspended on the date of the offense.

¶ 39     Further, the State presented a certified copy of defendant's driving abstract in support of this contention. A certified copy of the abstract of a motorist's driver's license is *prima facie* evidence of the facts stated therein and shall be admitted as proof of any prior convictions, records, notices, or orders recorded on individual driving records maintained by the Secretary of State. 625 ILCS 5/2-123(g)(6) (West 2016). "Once the State submits an abstract, a defendant always has the opportunity to present evidence to rebut the abstract's veracity." *People v. Meadows*, 371 Ill. App. 3d 259, 263 (2007). When a defendant fails to challenge the abstract's accuracy, however, its contents are deemed accurate. *Id.*

---

[3] Though it is not relevant to the parites' contentions on appeal, we note section 6-303(d) requires also that the conviction be the defendant's second conviction for violation of section 6-303, and that the prior conviction occurred while the person's driver's license was suspended or revoked for, *inter alia*, a statutory summary suspension under section 11-501.1 of the Code. 625 ILCS 5/6-303(d) (West 2016). These facts were established by the parties' stipulation. *Supra*, ¶ 15.

¶ 40    Defendant never challenged the veracity of the contents of the driving abstract in the trial court, and he never contended the abstract failed to establish his license was summarily suspended on the date of the offense. The trial court reasonably inferred, based on Etti's testimony and defendant's driving abstract, that defendant's statutory summary suspension was in effect on November 11, 2016, where defendant presented no evidence from which the contrary inference could be drawn. See *id.* Defendant failed to challenge the abstract and its contents are therefore deemed accurate. *Id.* Accordingly, we conclude the State presented sufficient evidence to establish driving privileges were summarily suspended pursuant to section 11-501.1 of the Code at the time of the offense.

¶ 41    Defendant nevertheless argues his driving abstract contradicts Etti's "vague" testimony on the subject and does not establish his most recent summary suspension was in effect at the time of the offense. According to defendant, the driving abstract shows his license was summarily suspended in January 2013 and that summary suspension was extended to January 2015, but it does not establish the summary suspension was extended again. Defendant notes that section 6-208.1(a)(1) of the Code provides that a typical statutory summary suspension lasts 12 months and asserts "[i]t is possible for a statutory summary suspension to be extended if all applicable reinstatement fees have not been paid." Defendant argues the driving abstract shows defendant's most recent statutory summary suspension ended in January 2015, 21 months before his arrest in this case. He contends, because the State failed to introduce any evidence that the suspension was extended beyond January 2015 for the failure to pay the reinstatement fees, the State failed to prove this fact beyond a reasonable doubt. We disagree.

¶ 42     As an initial matter, defendant's argument is based on a faulty premise. He contends "it is possible for a statutory summary suspension to be extended if the applicable reinstatement fees have not been paid." In fact, the converse is true: driving privileges that have been summarily suspended *will not be reinstated until* the fees have been paid. 625 ILCS 5/6-208.1(c) (West 2016); *People v. Martinez*, 184 Ill. 2d 547, 551 (1998) ("We find that the legislature intended that payment of the [reinstatement] fees is a prerequisite to the reinstatement of driving privileges. Therefore, the period of statutory summary suspension continues until the fee is paid."). Thus, it is not merely "possible" for a statutory summary suspension to remain in effect upon nonpayment of fees; it is a statutory certainty.

¶ 43     Additionally, defendant's driving abstract does not, as defendant contends, establish defendant's statutory summary suspension terminated on January 30, 2015. It establishes only the statutory summary suspension had a provisional termination date of January 30, 2015. The fact a period of statutory summary suspension has expired results only in a person becoming eligible to have his or her driving privileges reinstated, and it is the payment of the reinstatement fees that reinstates the privileges. *Martinez*, 184 Ill. 2d at 551; 625 ILCS 5/6-208.1(a), (c) (West 2016) (driver shall not be "eligible" for reinstatement until expiration of statutory summary suspension period and payment of reinstatement fees is a prerequisite to reinstatement of driving privileges). Section 6-208.1(c) of the Code provides "[d]riving privileges may not be restored until all applicable reinstatement fees, as provided in this Code, have been paid to the Secretary of State and *the appropriate entry made to the driver's record*." (Emphasis added.) 625 ILCS 5/6-208.1(c) (West 2016). Putting aside the fact defendant failed to challenge the driving abstract below, he

points to nothing in his driving abstract which could be construed as an entry indicating defendant paid the reinstatement fees or that his driver's license had been reinstated.

¶ 44    Moreover, we reject defendant's contention the State was required to disprove the fact defendant's driving privileges had been reinstated based on his payment of the applicable reinstatement fees. The State presented the abstract to prove defendant's summary suspension was in effect at the time of the offense and defendant did not challenge this contention. He never asserted his driving privileges had been reinstated on the date of the offense in the trial court and, therefore, the State could not have found it necessary to put on evidence to rebut the assertion he makes for the first time on appeal. See *People v. McPeak*, 2012 IL App (2d) 110557, ¶ 7 (in prosecution of a defendant for driving while her license was suspended, the State was not required to prove the inapplicability of a statutory exception which permitted a person to drive a vehicle under a monitoring device driving permit). Accordingly, the State presented sufficient evidence to sustain the trial court's finding that defendant's driving privileges were summarily suspended pursuant to section 11-501.1 of the Code on November 11, 2016.

¶ 45    Defendant's final contention is that the admission and use of his driving abstract at trial to establish the status of his driving privileges violated his constitutional right to confront witnesses. Defendant acknowledges he has forfeited the issue because his attorney failed to object at trial and include the issue in his posttrial motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). He contends; however, we can excuse his forfeiture and grant him relief either under the plain-error doctrine or on the basis that his counsel was ineffective for failing to object to its admission.

¶ 46    The plain-error doctrine is a narrow exception to the forfeiture rule which permits the reviewing court to excuse a party's failure to preserve an issue for review and grant relief if clear

or obvious error occurred and either: (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) the error was so fundamental and of such magnitude that it affected the fairness of the trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant has the burden of persuasion under either prong of plain error. *People v. Fort*, 2017 IL 118966, ¶ 18 (quoting *People v. Herron*, 215 Ill. 2d 167, 187 (2005)).

¶ 47    When evaluating a claim of ineffective assistance of counsel, we apply a two-prong test under which the defendant must prove his counsel's performance fell below an objectively reasonable standard and the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989). The defendant must show that counsel's performance was both objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Veach*, 2017 IL 120649, ¶ 30. The burden is on defendant to satisfy both prongs of the *Strickland* test, and the failure to establish either defeats the claim. *Id.*

¶ 48    To succeed under either theory, defendant must establish there was error. *People v. Sanders*, 2012 IL App (1st) 102040, ¶ 24. The United States and Illinois constitutions guarantee criminal defendants the right to confront the witnesses against them. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The right to confrontation protects the defendant from testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 823-26 (2006). We review *de novo* whether the use at trial of an out-of-court statement violates a defendant's right to confrontation. *People v. Williams*, 238 Ill. 2d 125, 141 (2010).

¶ 49 In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held the confrontation clause bars admission of testimonial statements if a witness does not appear at trial unless the witness was unavailable to testify, and the defendant had a prior opportunity to cross-examine the witness. The confrontation clause applies only when an out-of-court statement is testimonial in nature; otherwise, the statement's admissibility is determined by applying evidentiary hearsay rules and exceptions to those rules. *Davis*, 547 U.S. at 821. Thus, the threshold question in confrontation-clause analysis requires the reviewing court to determine whether a statement is testimonial in nature. *People v. Hood*, 2016 IL 118581, ¶ 23.

¶ 50 The *Crawford* Court did not define what constitutes a testimonial out-of-court statement. *People v. Diggins*, 2016 IL App (1st) 142088, ¶ 13. Rather, it "described the class of testimonial statements covered by the confrontation clause as follows:

'Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, [citation] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, [citation] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " (Alterations in original; internal quotation marks omitted in original.) *Id.* (quoting *Crawford*, 541 U.S. at 51-52).

Relevant here, the Supreme Court has explained that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules,

but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

¶ 51    In *Melendez-Diaz*, the Court held the defendant's right to confrontation was violated by the introduction of certificates from laboratory analysts that stated plastic bags the police had seized from the defendant contained substances that were cocaine. *Id.* at 310-11. The certificates showed the result of the forensic analysis performed on the substances, reported the weight of the seized substances, and stated the substances were cocaine, and they were sworn to and signed before a notary public. *Id.* at 308. The Court concluded the certificates were "quite plainly affidavits," noting they had been created to establish a necessary fact at trial and functioned identically to live, in-court testimony. *Id.* at 310-11.

¶ 52    Defendant relies primarily on *Diggins*, 2016 IL App (1st) 142088, which relied on *Melendez-Diaz*, for his assertion that his driving abstract was a testimonial out-of-court statement which is subject to the protections of the confrontation clause. In *Diggins*, this court found a "certified letter" from an employee of the Illinois State Police Firearm Service Bureau averring the defendant lacked a valid firearm owner's identification (FOID) card violated the defendant's right to confrontation. *Diggins*, 2016 IL App (1st) 142088, ¶ 11. In the letter, the employee certified he had searched the FOID files using the defendant's name and date of birth, the bureau had previously received and denied a FOID application from the defendant, and, as of a date after the defendant's arrest but before trial, the bureau had no other record for the defendant. *Id.* ¶ 6. The letter was signed and notarized. *Id.* ¶ 7.

¶ 53     Relying on *Melendez-Diaz*, we concluded the certified letter was an affidavit, "as it was a declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." *Id.* ¶ 16. Further, we found the letter was " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.* (quoting *Crawford*, 541 U.S. at 52). We noted the certified letter, issued after defendant's arrest but before trial began, was "presumably" created in preparation of trial. *Id.* Because defendant's lack of a FOID card was an element of the offense, which the State had a burden to prove, we found the defendant's right to confrontation was violated where the record did not show the witness was unavailable to testify and that the defendant had a prior opportunity to cross-examine the witness. *Id.*

¶ 54     In this case, the certified abstract of defendant's driver's license file was not testimonial. With respect to the testimonial nature of the abstract, we first note the Secretary of State's certificate states, in relevant part, only that "the information set out herein is a true and accurate copy of the [defendant's] driving record." Thus, unlike the certifications in *Melendez-Diaz* and the certified letter in *Diggins*, the certificate does not set forth the Secretary of State's knowledge of the facts contained in defendant's driver's license file on the date of his arrest. Rather, the certificate merely certifies that the abstract is a true and accurate reflection of defendant's driving record. In other words, the relevant information contained in the abstract was collected prior to defendant's arrest and not in anticipation of his prosecution—it was simply a snapshot of information required by statute to be maintained by the Secretary of State. See 625 ILCS 5/6-117(b) (West 2016) (Secretary of State to maintain accurate records of all licenses suspended or revoked). Moreover, a person's driving abstract is maintained by the Secretary of State primarily

for the administration of its own affairs and serves an important administrative function. See *Melendez-Diaz*, 557 U.S. at 324; 625 ILCS 5/6-100 to 6-212 (West 2016) (granting the Secretary of State the authority to grant, cancel, suspend, revoke, and reinstate licenses or permits based on person's driving history). The record was not created for the purpose of establishing a fact at trial and, therefore, was not testimonial.

¶ 55   Defendant argues the abstract was testimonial because it was prepared in anticipation of litigation, as indicated by the fact each page was marked with the phrase "court purposes" and the fact the abstract states, in two different places, "Revocation in Effect on 11-11-2016." We are not persuaded. At most, this information indicates when and why the certified abstract was copied and transmitted, but not that the abstract itself was created for defendant's prosecution. This does not change the fact the information contained in the abstract was not generated or elicited in anticipation of trial but, rather, was maintained by the Secretary of State pursuant to its statutory duty. See 625 ILCS 5/6-117(b) (West 2016). Moreover, the revocation of defendant's driving privileges was not an element of the offenses at issue; rather, it was the statutory summary suspension of those privileges. Accordingly, we conclude defendant's driving abstract was not testimonial.

¶ 56   Having determined the driving abstract was not testimonial, the next step in our analysis is to determine whether the abstract was admissible under the rules of evidence and the exceptions thereto. *Davis*, 547 U.S. at 821. Defendant offers no argument regarding this issue. Accordingly, he has forfeited any such contention. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 57   Forfeiture aside, we find the abstract was admissible under the public records exception to the hearsay rule. Illinois Rule of Evidence 803(8) (eff. April 26, 2012), states "records, reports,

statements, or data compilations, in any form, of public offices or agencies setting forth *** matters observed pursuant to duty imposed by law as to which matters there was a duty to report" are generally admissible as evidence regardless of the availability of the declarant. Section 6-117(b) of the Code requires the Secretary of State to maintain records of all licenses suspended or revoked. 625 ILCS 5/6-117(b) (West 2016). Thus, defendant's driving abstract contained information the Secretary of State was by law required to observe and report, and it was therefore admissible under the public records exception to the hearsay rule.

¶ 58    Accordingly, because defendant's driving abstract was not testimonial and was admissible as a public record under Rule 803(8), we conclude defendant's right to confrontation was not violated, and the trial court did not err by admitting it into evidence. Because defendant has not established error, he is not entitled to relief under the plain-error rule. *People v. Hillier*, 237 Ill. 2d 539, 549 (2010). For that same reason, we reject defendant's claim of ineffective assistance of counsel that is predicated on his counsel's failure to object to the admission of his driving abstract. See *Sanders*, 2012 IL App (1st) 102040, ¶ 24 ("[C]ounsel cannot be ineffective for failing to object if there was no error to object to."). Accordingly, we affirm defendant's conviction.

¶ 59    For the reasons stated, we affirm the trial court's judgment.

¶ 60    Affirmed.