2016 IL App (1st) 140420

THIRD DIVISION
February 10, 2016

No. 1-14-0420

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 1383 |
| | ) | |
| JAMES DEMUS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a guilty plea to a vehicular burglary charge, defendant James Demus was sentenced to two years' probation. After being arrested for another vehicular burglary, the State filed a petition for a violation of probation. Following a hearing, Demus was found in violation of probation and sentenced to six years in prison. On appeal, he contends that the trial court failed to appoint him new counsel after he raised the ineffectiveness of his trial counsel. For the reasons that follow, we remand.

¶ 2     Demus originally pled guilty to a vehicular burglary charge, and the trial court sentenced him to two years' probation. Approximately two months later, he was arrested for allegedly burglarizing a vehicle in a parking lot near a Chicago Transit Authority (CTA) station. The State later filed a petition for a violation of probation.

¶ 3 At the hearing on the State's petition, Officer Michael Bos of the Chicago police department testified that during the afternoon of April 20, 2012, he received a radio dispatch that two or three males in a blue minivan with temporary license plates had just burglarized a vehicle in a parking lot near 4932 South Western Avenue. When Bos arrived at the parking lot, he observed a van matching the radio dispatch's description. As Bos approached the van, he saw an individual later identified as Demus "lying down" in the rear of the van along with "several stereo equipment items." Bos observed two other individuals in the van with Demus, one in the rear and one in the front driving the van. Bos ordered all three individuals out of the van and detained them.

¶ 4 While Bos was in the parking lot, Jaime Gonzalez approached Bos and told Bos that his Ford Expedition, which was parked in the same lot, had been burglarized. Bos removed the stereo equipment from the van and Gonzalez identified the stereo equipment as his. Later, the individual who called the police, Victor Gonzalez (no relation to Jaime) arrived at the scene. Victor Gonzalez identified all three individuals, including Demus, as the ones he saw burglarizing the vehicle.

¶ 5 Jaime Gonzalez testified that on April 20, 2012, he parked his Ford Expedition in a parking lot near 4932 South Western Avenue. At approximately 1:30 p.m., he exited a CTA train and walked toward the parking lot when he realized the windows of his vehicle "were busted." He also noticed that "all of the speakers, boosters, amplifiers, and the lock and everything [were] busted." These items, except the lock, were part of Gonzalez's vehicle's stereo system. Gonzalez spoke to a police officer and told him what happened. Gonzalez eventually recovered the stereo

equipment from the police. In court, Gonzalez stated that he did not give Demus permission to be inside his vehicle or to take his stereo equipment. Gonzalez admitted that he did not see Demus inside his vehicle or see him take anything from his vehicle.

¶ 6    The State rested and Demus moved for a directed finding, which the court denied.

¶ 7    Demus testified and admitted he was on probation. Demus also acknowledged that on April 20, 2012, he was in a van along with two friends, but stated that he was receiving a ride after getting off the CTA Orange Line. He was sitting in the rear of the van on the floor because there were no rear seats in the van, but denied that he was lying down. While he admitted stereo equipment was in the van, he denied that he took any items from Gonzalez's Ford Expedition. He did not know when the stereo equipment was put in the van, but noted the equipment was already in the van when he entered.

¶ 8    After argument, the court found Officer Bos to be "more credible" than Demus, and observed that Demus'sposition in the van, lying down, indicated that he "was attempting to [secrete] himself, showing a knowledge as to the items not being his" or his codefendants'. The court found by a preponderance of the evidence that Demus violated his probation.

¶ 9    At a later court appearance, trial counsel stated that she would not be filing any motions related to the violation of probation hearing. While both trial counsel and the assistant State's Attorney indicated they were prepared for sentencing, Demus addressed the court:

"[I]t's come to my knowledge, Officer Bos testified that he was the arresting officer, that he pulled us over and he was this and that. He is not the arresting officer on this case. And I tried to tell [trial counsel] if she would subpoena and get the inquiry it

would show that he wasn't even on the scene for 30 minutes later and that's called perjury.

And you sentenced me off what he said, as far as my violation, and he lied on the stand. And the inquiry would show that but [trial counsel] brushed me off when I hid it from my codefendant, Mr. Ross, that would show when the police responded to the scene, it happened at 1:30. Officer Bos didn't get on the scene until 2:07."

¶ 10    The court offered Demus a date to prepare his own motion, but Demus wanted the "help" of his trial counsel. Trial counsel indicated there was "conflicting" evidence regarding Demus's claim. The court instructed trial counsel and Demus to discuss the matter and if the "conflicting evidence *** [could not] be resolved" between them, it would allow Demus to file a *pro se* motion. The following colloquy then occurred between Demus and his counsel:

"[Demus]: I need [trial counsel] to Subpoena and get the inquiry, so I don't know how long it will take for her to get the Subpoena out.

[Trial counsel]: I don't have any way of getting that.

[Demus]: My codefendant had it.

[Trial counsel]: Well, he has it but I don't have it.

[Demus]: Why can't you subpoena it to get it? I [*sic*] been telling you about it since February.

[Trial counsel]: I don't have it."

The court indicated that whatever document the codefendant had, the State also had copies of it. The court suggested that trial counsel speak with the State to obtain the requested document. The

State indicated that it had "no idea what this defendant [was] talking about" but agreed to make a copy of the police review of the Office of Emergency Management and Communications tape, to which it assumed Demus was referring. The court believed that Demus wanted to see the "event query"[1] from his case, which Demus confirmed. The State agreed to make a copy of the event query and tender it to Demus. The court continued the case so that Demus could obtain a copy of the document and resolve the possible "conflict" with trial counsel.

¶ 11    At the next court appearance, trial counsel indicated that Demus still believed that Officer Bos lied during the violation of probation hearing. Trial counsel maintained that Demus was wrong. Trial counsel then addressed her client directly and asked Demus if he was going to file a *pro se* motion. Demus responded, saying "[y]ou are representing me and I want you to file it. You are not doing your job. You [*sic*] representing me. Why am I filing the motion if you are representing me?" The court instructed trial counsel and Demus to discuss the matter "in ***  back" and resolve the situation. After discussing the matter in private and off the record, trial counsel stated Demus would be filing a *pro se* motion. Demus, however, requested "help" writing the motion. Trial counsel told the court that she would give Demus "the supervisor's name," so he could call the public defender's office, "[a]sk to speak to the secretary," and obtain help.

---

[1] An "event query" is a "computer printout[] that document[s] communications between a 911 emergency services dispatcher and the Chicago police department." *People v. Maxey*, 2011 IL App (1st) 100011, ¶ 22. Throughout the record, defendant's references to the "inquiry" are presumably references to the "event query."

¶ 12    At his next appearance, Demus indicated that he was not able to call the number he obtained from trial counsel from jail. He requested the transcript and the event query so that he could write his motion. When the court instructed trial counsel to make a copy of the event query, Demus remarked:

> "I don't want [trial counsel] representing me. She haven't [*sic*] done anything for me in 16 months. She's my legal counsel. She's not going to do my motion. I don't want her on *** my case no more. I wrote her up twice [to the Attorney Registration & Disciplinary Commission] for [violating] professional rules of conduct 1.1, 1.2, 1.4. Nobody contacted me."

The court informed Demus that he could file a motion alleging ineffective assistance of counsel, "which can be done without a determination as to whether or not you can proceed *pro se*." The court instructed trial counsel to make a copy of the event query and transcript, and it allowed Demus an opportunity to review the documents and write his *pro se* motion. The court added that trial counsel would "technically still be on [Demus's] case."

¶ 13    Demus eventually filed a *pro se* motion for "retrial impeachment of witness testimony at hearing," arguing that Officer Bos lied during his violation of probation hearing by stating he detained Demus when the event query indicated Bos arrived at the scene more than an hour after he had been detained. The motion did not include any claims of ineffective assistance of counsel. The State moved to strike the motion because the court had already determined that Bos testified truthfully. The court denied the State's motion because it believed "something *** could possibly come out by way of testimony as far as allegations that Mr. Demus has made" in the

motion. The State brought Bos to court in case the motion proceeded. Demus then called Bos as a witness.

¶ 14    Demus asked Bos a series of questions, including when he arrived at the scene of the alleged burglary. Bos stated he arrived approximately five minutes after the radio dispatch call, which was approximately 1:45 p.m. Demus followed up, asking why the event query listed his arrival time at the scene at 2:46 p.m. Bos remarked "the sheet that you're looking at is not my arrival time on the scene" but rather "the time that the dispatcher put me down on the scene."As he continued to examine Bos, Demus stated that he was "bringing the lie to [*sic*] forefront" that Bos never could have detained him. Bos maintained that he stopped the van that Demus was in and saw him lying down in the rear of the van.

¶ 15    The court instructed Demus to ask questions rather than simply argue. Demus continued to question Bos and attempted to impeach him using the event query. The court informed Demus that if he wanted to impeach Bos, he would have to let Bos see the event query. Trial counsel then interjected that she would help Demus impeach Bos with the event query, stating, "I guess I would have to do this." While trial counsel attempted to impeach Bos, Demus left the courtroom. The court deputy informed the court that Demus "wanted to leave," and "got up and walked back into his cell."

¶ 16    The court adjourned the hearing and trial counsel spoke with Demus in private and off the record. Afterward, she told the court that Demus did not want to come back out and complete the hearing on his motion. The court then determined that Demus had abandoned his motion. Trial counsel moved for a new violation of probation hearing, arguing the evidence presented at

the original hearing did not prove Demus guilty by a preponderance of the evidence. The court denied the motion.

¶ 17    At Demus's sentencing hearing, he stated that he was not ready to be sentenced. Demus argued that his trial counsel did not produce the witnesses he wanted to testify at his rehearing. He mentioned speaking to trial counsel "multiple times" but that she never responded to him. He called the situation "a conflict of interest." He acknowledged that witnesses were present for his motion, but stated they were "not the witness[es] that [he] wanted subpoenaed." He further added:

> "I have a conflict with my attorney, which I've been having with her. I wrote her up three times. She's not doing anything for me. I had to do my own motion, *pro se*, because when I had witnesses–she's my attorney legally. *** I shouldn't have to do my own motion, but I did my own motion to save my own life. This is my life. But here it comes, I had the witnesses. *** She didn't tell me I had to subpoena my own witnesses when she's my attorney. Every paperwork I got, she's my attorney. Here it is, she's representing me today, but she's not representing me the time that I needed her. *** So I walked out on her because she didn't even have her notes at the time she was doing my hearing. She was going off my notes. So we have a conflict of interest.
>
> Here it is that she said she couldn't even come back there and talk to me the day-you [*sic*] violating my rights, *** the right to consult with counsel. She told me that you guys said I couldn't talk to my counselor during the biggest motion of my life. This is my life, I'm saying. I'm going against perjury charges on a police officer, which I can prove."

¶ 18    Trial counsel responded that Demus was proceeding on his own motion, that she was not his cocounsel, and only assisted him when asked to do so by the court. She also told Demus previously that she did not feel what he was doing was "legal." The court stated that it treated Demus's motion "somewhat like a *Krankel* motion" but that "[i]t went beyond what *Krankel* would allow" by allowing Demus to question the officer. When Demus left the courtroom during the middle of his motion, the court concluded that Demus "abandoned the entirety of his motion." The court then proceeded with sentencing and sentenced Demus to six years in prison with a term of two years' mandatory supervised release. This appeal followed.

¶ 19    The issues on appeal are whether Demus adequately raised a claim of ineffective assistance of counsel and, if so, whether the trial court followed the appropriate procedure to resolve that claim. Under *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, when a defendant alleges a posttrial *pro se* claim of ineffective assistance of counsel, the trial court should examine the factual basis underlying the defendant's claim. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). *Krankel* also applies to *pro se* motions alleging ineffective assistance of counsel arising from violation of probation hearings. *People v. Patrick*, 2011 IL 111666, ¶ 29. The first step in determining if *Krankel* applies is to ascertain if the defendant has adequately raised a claim of ineffective assistance of counsel. *People v. Washington*, 2015 IL App (1st) 131023, ¶ 11. In alleging such a claim, the "pleading requirements *** are somewhat relaxed." *Id.* The defendant simply must make some allegation of ineffective assistance of counsel and "provide some factual specificity of the reason for the allegation." *Id.* However, "[a] bald allegation that counsel rendered inadequate representation is insufficient" to trigger either a

preliminary inquiry or a hearing under *Krankel*. *People v. Radford*, 359 Ill. App. 3d 411, 418 (2005).

¶ 20 A defendant need not file a conventional, written motion to raise his claim. *People v. Taylor*, 237 Ill. 2d 68, 76 (2010). Oral claims may suffice. *Washington*, 2015 IL App (1st) 131023, ¶ 13; see also *Patrick*, 2011 IL 111666, ¶ 29 ("[A] *pro se* defendant is not required to file a written motion ***."). As long as the defendant " 'bring[s] his *** claim to the trial court's attention,' " he will sufficiently allege ineffective assistance of counsel. *Taylor*, 237 Ill. 2d at 76 (quoting *Moore*, 207 Ill. 2d at 79). Thus, the substance of the claim, not its form is the chief concern. *Id.*

¶ 21 Whether or not a defendant sufficiently alleges ineffective assistance of counsel is a question of law, and therefore, we review this question *de novo*. *Id.* at 75.

¶ 22 We find that Demus sufficiently raised a *pro se* claim of ineffective assistance of counsel. Demus's underlying claim was that Officer Bos lied on the witness stand during his violation of probation hearing because the event query placed Bos' arrival at the scene of Demus's arrest much later than when Demus was actually arrested. Therefore, Demus argues that Bos could not have arrested him, and any assertion that he did was perjury. Additionally, Demus directly alleged that he requested his trial counsel obtain the event query, but she failed to heed his request. Therefore, Demus's ineffective assistance claim was sufficiently specific. See *Washington*, 2015 IL App (1st) 131023, ¶ 11.

¶ 23 We have examined the authorities cited by the State in support of its argument that Demus's claim lacked factual specificity and find them inapposite. See *People v. Ward*, 371 Ill.

App. 3d 382 (2007) (defendant made general claims about missing evidence); *Radford*, 359 Ill. App. 3d at 416 (defendant's claim that " 'if my witness was called and my lawyer would have did a halfway good job that I would be home with my family' " insufficient to raise ineffective assistance claim); *People v. Harris*, 352 Ill. App. 3d 63, 71 (2004) (defendant's general claim that counsel failed to call his family members who " 'saw everything,' " first raised in presentence investigation report, insufficient to raise ineffective assistance claim); *People v. Rucker*, 346 Ill. App. 3d 873 (2003) (no facts asserted in support of ineffective assistance claim). Here, Demus specifically claimed that, despite his requests, his trial counsel failed to subpoena the event query, which he alleged would have impeached one of the chief witnesses against him.

¶ 24    Furthermore, the record reflects that Demus's allegation that his trial counsel was ineffective was brought to the court's attention. As recounted above, Demus's statements during various court appearances, both to the court and to his counsel, alerted the court to his claim. Further, the court even mentioned to Demus that he could file a *pro se* motion alleging ineffective assistance of counsel, implicitly demonstrating the court's awareness of his allegations. Thus, the trial court was aware Demus wanted his trial counsel to subpoena a document that would have allegedly provided evidence to impeach the officer who testified at his violation of probation hearing and which counsel failed to do. Therefore, despite the fact Demus did not file a written, *pro se* motion or even utter the words "ineffective assistance of counsel," he sufficiently alleged his trial counsel's ineffectiveness and brought his claim to the trial court's attention. See *Taylor*, 237 Ill. 2d at 76 (quoting *Moore*, 207 Ill. 2d at 79).

¶ 25 We must next address whether the trial court sufficiently followed *Krankel* procedures after Demus raised his ineffective assistance claim. Demus argues that the court failed to follow *Krankel* when it did not appoint him new counsel and instead proceeded to an evidentiary hearing where he had to participate *pro se* concerning his allegations of perjury by Officer Bos.

¶ 26 Beginning with *Krankel*, 102 Ill. 2d 181, our supreme court has on a number of occasions articulated how trial courts should handle posttrial *pro se* claims of ineffective assistance of counsel. See *Moore*, 207 Ill. 2d at 77-82; *People v. Chapman*, 194 Ill. 2d 186, 227-31 (2000); *People v. Johnson*, 159 Ill. 2d 97, 124-28 (1994); *People v. Nitz*, 143 Ill. 2d 82, 134-36 (1991). New counsel is not automatically appointed for a defendant simply because he raises a *pro se* claim of ineffective assistance of counsel. *People v. Jolly*, 2014 IL 117142, ¶ 29. The proper course is for the trial court to "first examine the factual basis of the defendant's claim." *Moore*, 207 Ill. 2d at 77-78. During the preliminary inquiry into the defendant's claims, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted." *Id.* at 78. The trial court may determine whether to appoint new counsel based on: "(1) the trial counsel's answers and explanations; (2) a 'brief discussion between the trial court and the defendant'; or (3) 'its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face.' " *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 22 (quoting *Moore*, 207 Ill. 2d at 78-79).

¶ 27 After the preliminary inquiry, "[i]f the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may

deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed" to represent the defendant at a hearing on his claim of ineffective assistance of counsel. *Moore*, 207 Ill. 2d at 78. Newly appointed counsel will be able to independently assess the defendant's claims and "avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to defendant's position." *Id.* If the trial court fails to address a defendant's claim of ineffective assistance of counsel, we review the proceedings *de novo*. *Tolefree*, 2011 IL App (1st) 100689, ¶ 25.

¶ 28    Here, we acknowledge the trial court held an evidentiary hearing, trying to help Demus explore the merits of his perjury claim that Officer Bos lied during Demus's probation revocation hearing. Additionally, the court allowed Demus great latitude in examining Bos about the event query. The court's hearing, however, focused on the underlying merit of Demus's claim concerning the event query, rather than whether his trial counsel was ineffective for failing to obtain it. By proceeding directly to a hearing on Demus's substantive claim where he was forced to participate *pro se* , the trial court deprived Demus of the benefit of new counsel in exploring his claim of ineffective assistance of his trial counsel, which is inconsistent with *Krankel.*

¶ 29    In reaching this conclusion, we reject the State's claim that any impropriety by the trial court was harmless. Supporting this proposition, the State relies on *Nitz*, 143 Ill. 2d at 135, where our supreme court found a *Krankel* error to be harmless, and argues that the same result is warranted here because Demus's underlying claim was "totally without merit." But in *Nitz*, the trial court addressed the defendant's ineffective assistance of counsel claims, then erred during the ensuing evidentiary hearing by allowing the defendant's trial counsel to question the two

witnesses whose absence at his trial formed the basis of his ineffective assistance claim. See *id.* at 133-35. Our supreme court concluded the error was harmless because the defendant's representations regarding the substance of what the witnesses would testify to conflicted with the witnesses' testimony at the hearing. *Id.* at 135. Here, in contrast, not only did the court fail to address the merits of Demus's claim of ineffective assistance of counsel, but it further erred during the subsequent evidentiary hearing by (i) allowing counsel whose performance Demus claimed was deficient to participate in the hearing and (ii) deeming Demus's claim abandoned when he left the courtroom, evidently to express his disagreement with counsel's participation. Consequently, the State's reliance on *Nitz* is misplaced. See also *Tolefree*, 2011 IL App (1st) 100689, ¶¶ 26-29 (finding a trial court's *Krankel* error harmless, but only after the court reached the merits of the defendant's ineffective assistance of counsel claim).

¶ 30    Finally, we reject the State's contention that the alleged error pertained only to matters of trial strategy and, therefore, must be deemed harmless. Decisions as to what witnesses to present, what evidence to present to those witnesses, and how to cross-examine witnesses can clearly fall into the category of trial strategy. See *Ward*, 371 Ill. App. 3d at 433. But here, Demus's claim stems from an allegation that his trial counsel failed to obtain a relevant and potentially impeaching document, which, according to Demus, he repeatedly requested his trial counsel to do. Moreover, the State acknowledged that it had the event query, indicating the document was readily accessible to Demus's trial counsel. While counsel's failure to *use* the event query in the manner urged by Demus may have qualified as trial strategy, we cannot say on this record that counsel's failure to even obtain a copy of the document falls into the same category.

¶ 31    Accordingly, the proper remedy is to remand the cause to the trial court to conduct a hearing on Demus's claim of ineffective assistance of counsel with the appointment of new counsel.  See *Moore*, 207 Ill. 2d at 78. We remand the cause to the circuit court of Cook County for proceedings consistent with this opinion.

¶ 32    Remanded with directions.